1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 9   JOSH THOMAS, | )   1:15-cv-01059-LJO-BAM (PC) |
| 10           Plaintiff, | ) |
| | )   FINDINGS AND RECOMMENDATIONS |
| 11     v. | )   RECOMMENDING DISMISSAL OF |
| | )   CERTAIN CLAIMS, WITH PREJUDICE, |
| 12 | )   FOR THE FAILURE TO STATE A |
| 13   C. OGBEHI, et al., | )   COGNIZABLE CLAIM, AND TRANSFER |
| | )   OF CLAIMS |
| 14           Defendants. | ) |
| | )   (Doc. 41) |
| 15 | ) |
| | )   **FOURTEEN (14) DAY DEADLINE** |
| 16 | ) |

17       Plaintiff Josh Thomas, a state prisoner proceeding *pro se* and *in forma pauperis*, brings

18  this action pursuant to 42 U.S.C. § 1983, under 42 U.S.C. § 1983, the Americans with

19  Disabilities Act, 42 U.S.C. § 12101 et seq., and the Rehabilitation Act § 504.

20       Currently before the Court for screening is Plaintiff's third amended complaint, filed on

21  November 28, 2017.  (Doc. 41.)

22  **I.      Screening Requirement and Standard**

23       The Court is required to screen complaints brought by prisoners seeking relief against a

24  governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. §

25  1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or

26  malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

27  relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28

28  U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); *Moss*, 572 F.3d at 969.

II.     **Summary of Plaintiff's Allegations**

Plaintiff alleges as follows:  Plaintiff suffers with disabilities within the meaning of Title II of the Americans With Disabilities Act ("ADA") which requires permanent use of devices/equipment and medical appliances.  The California Department of Corrections and Rehabilitation physicians prescribed treatment:  permanent wheelchair, gloves, cane, back brace, longitudinal arch supports, eggcrate mattress, and single bunk.  Furthermore, physicians prescribe pain treatment, and many limitation restrictions.  Also, while housed at California Substance Abuse Treatment Facility ("CSATF"), inmates were allowed to have personal property, and Plaintiff's family mailed him jeans and a jacket.

On January 11, 2011, Plaintiff went out to Mercy Hospital for Valley Fever treatment.  Plaintiff was also transferred to Cocoran State Prison Hospital to complete treatment.  On

February 19, 2011 Defendants T. Price and J. Lopez confiscated Plaintiff's personal property, including ADA devices, equipment, and appliances.

On May 11, 2011, Plaintiff was discharged from Cocoran State Prison Hospital to the custody of Defendants Does 1 and 2, Transportation Correctional Officers, who forced Plaintiff to travel using a broken wheelchair. Specifically, seat deteriorated by rain water; back rest torn nearly off; both being held together with torn sheet string; rusty and missing wheel ball bearing; wheels wobbling and very, very hard/difficult to ambulate. Defendants knew of the risk to Plaintiff by using the broken wheelchair, but violated doctor's orders, resulting in Plaintiff suffering severe pain and back, shoulder and neck injuries. Plaintiff was transported from Corcoran State Prison Hospital to CSATF's Receiving and Release, and from there to Facility B Housing Unit 3 via Work-Exchange. However, Plaintiff had to travel in great pain and suffering in the back, neck, shoulder.

On May 12, 2011, Plaintiff inquired to Defendants T. Price, and J. Lopez about return of personal property, medical devices/equipment/appliances. Defendants stated, "We thought you was dead (sic). We stored your property in the property room for a long time. We had to send it to RR." Defendant J. Lopez stated, "We sent your wheelchair to B clinic." Plaintiff spoke with Defendant LeMay (RN) and requested the wheelchair, eggcrate mattress, cane, gloves. Defendant LeMay stated, "I don't have time to look for your wheelchair." Plaintiff showed her the old broken wheelchair, and explained his pain, suffering, and risk. Again, Defendant LeMay stated. "I told you I don't have time to look for your wheelchair," and then slammed the clinical door. Plaintiff then went and spoke with Defendants T. Price and J. Lopez and explain that he was in pain and what LeMay had done, and requested help. Defendant J. Lopez laugh and stated, "Don't worry, you'll eventually get your property." Defendant T. Price stated, "We'll call around and see what we can do."

On May 13, 2011 Plaintiff reminded J. Price and J. Lopez to call for the wheelchair and appliances and property. T. Price stated, "We haven't forgotten." Plaintiff's pain, suffering and injury was aggravated as the result of the broken wheelchair. Plaintiff spoke with Defendant LeMay and requested his wheelchair, cane, eggcrate mattress, and gloves. LeMay stated, "I told

you I don't have time to go out back.  Don't you see I am busy?"  Plaintiff explained that the broken wheelchair was causing pain, and that he needed a cane.  Defendant LeMay stated, "I don't care, I am too busy to go out back."

On May 13, 2011, Plaintiff spoke with T. Price and J. Lopez and explained his severe pain and suffering in the back, shoulders, neck, and legs, and what LeMay had said.  Plaintiff inquired whether they had made the call.  T. Price stated, "We'll look into it."  J. Lopez stated, "You need to go inside."

On May 14, 2011 Plaintiff spoke with Defendant Thomas and requested his wheelchair, cane, eggcrate mattress, and gloves, and informed her that the broken wheelchair was causing severe pain, and that he could injure himself.  Defendant Thomas stated, "I don't have time to go out back, you need to stop complaining, wait until nurse LeMay comes back tomorrow."

On May 15, 2011, Plaintiff again spoke with Defendant Thomas and requested his wheelchair, cane, eggcrate mattress, and gloves, and informed her that his pain and suffering were worse.  Defendant Thomas stated, "I told you yesterday, I don't have time to go out back to get your wheelchair, so come back tomorrow."

On May 16, 2011, Plaintiff spoke with both Defendants Thomas and LeMay, again explaining that pain and that he had to use his legs to push the broken wheelchair backward. Plaintiff requested his cane, eggcrate mattress, wheelchair and gloves.  Defendant Thomas stated, "Nurse LeMay is back; talk to her."  Plaintiff spoke with Defendant LeMay, who stated, "I don't have time to go out back and get your wheelchair.  If I find time, I'll go look."

On May 16, 2011, Plaintiff spoke with both T. Price and J. Lopez explaining what Thomas and LeMay had said.  T. Price stated, "Come back later, we'll talk about this later." Defendant J. Lopez stated, "You need to stop annoying us.  Your wheelchair and cane were taken to facility B medical clinic."  Plaintiff asked about his property, and J. Lopez stated, "We sent it to RR.  YOU NEED TO GO TO YOUR DORM."

///

///

///

4

On May 17, 2011, Plaintiff spoke with LeMay about the same issues, and was denied, not only by her, but other medical staff Thomas.  Plaintiff again spoke with J. Lopez and requested his property and medical devices, and J. Lopez stated, "Facility B medical clinical staff lost your wheelchair and other appliances.  Go to your dorm."

On May 18, 2011, Defendants Does 3 and 4, Facility F escort officers, stated, "Get your property, you are moving to F yard."  Plaintiff was suffering back pain and in the shoulder, buttock, neck, legs, and hands.  Plaintiff inquired about ADA transportation.  Doe 4 stated, "We don't bring a van, you have to roll yourself."  Plaintiff reminded Does 3 and 4 of the long distance to travel between B and F Facility, that the wheelchair was broken, and that he was in severe pain.  He asked if they would push him, and Doe 3 or 4 stated, "No, you would have to roll yourself.  We can go slow.  Let's go."

On May 18, 2011, while housed on Facility F, Plaintiff spoke with a Licensed Vocational Nurse ("LVN") and requested a medical doctor's appointment, due to his pain issues and because his wheelchair was broken.

On May 19, 2011, Plaintiff again spoke with the LVN about when he would see a doctor, stated that he could not sleep because of the pain, and requested another wheelchair.  The LVN stated, "I think you are on the doctor's line.  You would have to talk to Mis[s] Belantes about that wheelchair."

On May 20, 21, and 23, 2011, Plaintiff spoke with two LVNs and requested to see the head nurse or doctor, and was denied.  Plaintiff explained that his pain was increasing, that he couldn't sleep, and that the continued use of the broken wheelchair aggravated his injuries.  The LVNs stated, "I told you yesterday, I think you are on the doctor's line.  You must submit a sick-call request.  Nurse Belantes will be here tomorrow.  There is nothing I can do, you have to wait until tomorrow."

On May 23, 2011, Plaintiff had to miss breakfast and dinner because of the pain and suffering, and was unable to use the broken wheelchair.  He had no gloves or wheelchair cushion.

///

On May 24, 2011, Plaintiff spoke with Defendant Belantes.  He explained that B medical staff and building staff claimed that his wheelchair was lost.  He also explained that the broken wheelchair caused severe pain, aggravated his injured back, shoulders, and neck, that his buttock was severely inflamed, and that he had sore hands and numbness in the feet and legs.  Plaintiff requested another wheelchair.  Defendant Belantes stated, "I am not giving you a wheelchair. Put in a medical request; I have other things to do.  I'll call Facility B staff when I have time.'"

On June 3, 2011, Plaintiff spoke with Defendant Belantes and requested another wheelchair, and asked had she contacted [staff].  Defendant Belantes stated, "I am not giv[ing] you a wheelchair.  Facility B staff do not have your wheelchair.  You need to contact Facility B medical staff."  Plaintiff could not go to breakfast and dinner because of pain and suffering. However, he had a medical appointment with Defendant Johai, MD.

On June 3, 23, 28, and 29, 2011, Plaintiff gave notice of continued suffering, serious pain and suffering in the back, shoulders, neck, that he could not sleep, that the injuries were worsening, that he had to miss meals and programs, and that the loner wheelchair was broken. Plaintiff requested a four-wheel walker, a new wheelchair, gloves, and eggcrate mattress. Defendant Johai stated, "You are not here for that rut in for sick call (sic).  I am sorry, we will address those problems on another day."

On June 29, 2011, Plaintiff spoke with Defendant Belantes about the same matters. Defendant Belantes stated, "I don't have time deal with you today.  Were you listening to me?  I said I don't have time to deal with you today." Defendant Belantes ordered Plaintiff to leave.

On July 9, 2011, Plaintiff spoke with A. Faria, RN, and requested to change wheelchairs. A. Faria stated, "I am not the ADA equipment/appliance nurse.  You got to come back."

On August 24, 2011, Plaintiff filed his grievance–an 1824 Reasonable Accommodation request for a wheelchair, cane, eggcrate mattress, cushion, and gloves. On September 4, 2011, Plaintiff submits a health care service request, giving notice of chronic pain, and requested a walker, which was denied.

On September 12, 2011, Plaintiff spoke with Defendant Belantes and gave notice that he had been missing breakfast and dinner, and that he was experiencing pain and numbness, and

requested a new wheelchair, gloves, and medical treatment.  Defendant Belantes stated, "I'm going to give you a cane.  Come out back and get your cane.  You need to get out of that chair.  I have other things to do.  You need to leave."  And denied his request for a new wheelchair and gloves.

Defendant Oder was assigned to investigate Plaintiff's disabilities, medical appliances and reasonable accommodation devices.  However, on September 12, 2011, Defendant Oder provided a finding that Plaintiff did not suffer with disabilities, and request for gloves was denied.  Yet, Defendant Oder acknowledge that Plaintiff arrived via wheelchair from Corcoran.

On September 13, 2011 Plaintiff spoke with Defendant Belates and requested to trade the broken wheelchair.  Plaintiff needed to see the doctor because he was suffering pain, could not sleep, and had to miss meals and programs.  Defendant Belantes stated, "No, I got a call.  You can come out back and get an eggcrate mattress."  Yet Defendant Belantes denied Plaintiff access to the doctor and another wheelchair.

On September 14 or 15, Plaintiff's grievance was assigned to Defendant Ogbuehi, Physician's Assistant ("PA"), for response and recommendation.

On September 20, 2011, Plaintiff had an interview with Defendant Ogbuehi, and gave notice that doctors had prescribed treatment and accommodations for Plaintiff's pain, suffering and disabilities, and notice that his wheelchair was broken and causing pain and further injury. Defendant Ogbuehi stated, "I can order for you wheelchair gloves, I don't know how to get the wheelchair."

Defendant Ogbuehi sought advice from Defendant Byers, PA.  Defendant Byers stated, "You should deny the appeal/grievance.  The inmate has strong legs, he can walk, he do not meet criterion for DPO wheelchair cushion, wheelchair, or gloves."  Defendant Ogbuehi then stated, "You will be receiving a response.  This meeting is over."

Defendant Ogbuehi denied Plaintiff's grievance, holding as follows:  "After physical exam for externalities, strength, and review of UHR, MRI 8/29/10, I/M do not meet criterion for DPO, eggcrate mattress, cushion, gloves.  I/M will benefit from walker use and walker cane, ground floor cell, bottom bunk, cane, walker, wheelchair rescind, removal from previous DPO.

CONDITION has improved, inmate is permanently mobility impaired (DNM).  He uses no devices, he walks 100 yards without pause or without assistive devices."

On September 23, 2011 Defendant Oder knowingly, willingly and deliberately prepared a false Health Care Service Memorandum to aide Defendants Ogbuehi's and Byers' discrimination, deliberate indifference, retaliation, and denial of CDCR services, benefits of services, and medical treatment.  Defendant Ugwueze, Health Care Manager, reviewed Defendants Ogbuehi's, Byers', and Oder's decision to deny Plaintiff any treatment or accommodation, and refused to take any steps to remedy the constitutional violation.

On September 26, 2011, Plaintiff spoke with an LVN.  He requested to see a doctor, because he could not sleep, was in severe pain, had to miss meals and his diabetes night snack, missed programs, and needed another wheelchair.  The LVN stated, ''You got to talk to the nurse or put in a sick call slip; they will schedule you to see the doctor."

Plaintiff was instructed to report back to Medical Clinic.  There, Plaintiff spoke with Defendant T. Brown and requested a new wheelchair, cushion, gloves, and walker with set and four wheel.  Plaintiff gave notice of continued suffering, aggravating shoulders, neck pain, swollen hands, and sore buttock.  Defendant T. Brown stated, "Your medical chart is missing.  I need to review your chart, so we'll see you in two weeks."

On October 3, 2011, Plaintiff was interviewed a second time about his reasonable accommodation requests.  Again, Defendant Ogbuehi denied any accommodation or medical treatment, and did not correct his prior decision to rescind the wheelchair and change DPP status. Defendant Ogbuehi stated, "I reviewed this issue with you on September 20, 2011.  I don't understand why you were sent back to see me.  You should be receiving a response soon.  Have a good day."

On October 5, 2011, Plaintiff spoke with Defendant Belantes, who stated, "I was told to issue you a wheelchair.  Come out back and get your wheelchair."  However, the wheelchair Defendant Belantes provided was also broken.  Plaintiff gave notice of these problems and requested another wheelchair.  Defendant Belantes stated. "You have another wheelchair, and you are still complaining.  I don't have another wheelchair.  You need to leave to leave."

On October 5, 2011, Plaintiff also spoke with Defendant Beltran, who was assigned to investigate Plaintiff's grievance/reasonable accommodation request, and medical treatment. During the interview, Plaintiff gave notice of Does 1-2's, T. Price's, J. Lopez's, Lemay's, Thomas', Ogbuehi's, Byers', Does 3-4's, Belantes', Faria's, and Brown's acts and omission, and his pain and suffering.  Plaintiff further gave notice that the wheelchair Defendant Belantes issued was broken, his risk of further injuries, and his pain and suffering.  Plaintiff requested another wheelchair, wheelchair cushion, gloves, and a walker.  Defendant Beltran stated, "I'm going to investigate these issues.  I'll get back to you.  I'll get back with you after I complete my investigation.''  Defendant Beltran denied/granted in part all relief.

On October 12, 2011 Plaintiff spoke with Defendant Johal at the medical clinic and gave notice of the severe pain in the lower back, right leg numbness, tingling in the feet, that he could barely walk, that the wheelchair was broken, and that PA Ogbuehi changed Plaintiff's DPP status, and rescinded the wheelchair.  Plaintiff gave Defendant Johal a demonstration of how difficult it was to use the broken wheelchair.  Plaintiff requested another wheelchair, gloves, eggcrate mattress, walker with four wheel and set, and treatment for the pain and suffering. Defendant Johal stated, "I'll schedule your next visit in 45 days.  I'll see you in 6 weeks."

On October 12, 2011 Plaintiff received Defendant Beltran's response to Plaintiff's grievance, which was approved by Defendant Tann.  Although granted in part, both Defendants refused to ensure that Plaintiff receive adequate medical treatment and ADA Services.  Plaintiff gave notice to Defendant Umi of the ongoing constitution violations via his grievance. Defendant Umi rejected the grievance and turned a blind eye to the excessive risk to Plaintiff's health and safety.

On October 12, 2011, Defendant Alva conducted a second interview of Plaintiff's grievance allegations.  During the interview, Plaintiff gave notice concerning the prior Defendants' acts and ongoing constitutional violation.  Plaintiff gave Defendant Alva notice that both wheelchairs were broken, that his pain and suffering was worsening, and that he had to miss meals, appointments, and programs. Plaintiff also requested ADA and medical appliances:  back brace, gloves, longitudinal arch supports, and medical treatment.  Defendant Alva stated, "I see

1   you are using a wheelchair.  Per the physician response worksheet dated 9/20/11, and completed

2   by (PA) Byers, you do not meet the criteria for DPO designation, an eggcrate mattress, cushions

3   or gloves.  You will receive my decision."  With more statements by Defendant Alva.

4          On or after October 17, 2011, Plaintiff received Defendant Alva's decision, which denied

5   Plaintiff adequate relief.  Defendant Alva held, "Based on the above information, your request

6   for a cane is granted.  Your request for a wheelchair, eggcrate mattress, cushion and gloves is

7   denied."  Defendant Alva falsified documents, because Defendant Byers did not complete the

8   physician's response worksheet dated 9/20/11.  Alva knowingly and intentionally turned a blind

9   eye to the risk to Plaintiff's health and safety, deliberately ignored doctor's orders, and interfered

10  with prescribe treatment.  Alva willingly excluded or denied Plaintiff the service, benefit, and

11  programs, and refused to take any remedy step after constitutional violation.  Defendant Reynoso

12  was also given notice via Plaintiff's grievance of the ongoing constitutional violations, and yet

13  approved Defendant Alva's and other defendants' decision to violate Plaintiff's rights.

14          On October 31, 2011 Defendant Johal completed a Health Care Services request for an

15  MRI of Plaintiff's lumbar spine, which was approved by Defendant Ugwueze.

16          On November 20, 2011, Plaintiff had a medical appointment with Defendant Johal.

17  Plaintiff gave notice that the wheelchair was small, broken, and continued to aggravate his

18  injuries, that the pain and suffering was unbearable, that he had missed meals and programs, and

19  that he needed another wheelchair and walker with set and four wheels.  Plaintiff requested a

20  back brace, longitudinal arch supports, and pain treatment.  Defendant Johal stated, "I just seen

21  you October 12, 2011 about this issue (sic).  You complain too much about your back pain and

22  this wheelchair.  I'll schedule you to return to the clinic within 54 days 6 weeks.  I am not issuing

23  another wheelchair."

24          On November 22, 2011 Dr. Ranjiv Saini issue an MRI, which determined that Plaintiff's

25  back had worsened, and sent a copy of the Radiology Interpretation.  On December 4, 2011,

26  Plaintiff gave notice to Defendant Tann via the grievance of the ongoing issues.  Defendant Tann

27  denied Plaintiff's requests, and refused to direct medical staff to provide adequate devices, or to

28  investigate, discipline, reprimand, or discharge the involved Defendants.

On December 15, 2011, Plaintiff had a medical appointment with Defendant Johal. Plaintiff again gave notice that the broken wheelchair was causing him to suffer, that he had to miss meals and some programs, and that he could not sleep because of the pain.  Plaintiff requested another wheelchair, other devices, and pain treatment.  Defendant Johal denied Plaintiff's requested treatment and ADA Services, despite being aware of the Radiology interpretation.  Defendant Johal stated, "We are not addressing those issues.  You are here for eye problems.  The LVN was contacted regarding the order rescinding your wheelchair.  You refused to give it up, so you have a wheelchair."

On January 4, and 10, 2012, Plaintiff had a medical appointment, and spoke with Defendants Johal and Belantes.  Plaintiff requested to trade the broken wheelchair, medical treatment, and medical appliances.  Both Defendants denied any medical treatment or services.

On January 13, and 17, 2012, Defendant Carrasquillo had an interview with Plaintiff regarding denial of medical treatment and ADA RA Services.  Plaintiff gave notice of ongoing constitutional violations.  Plaintiff requested a new wheelchair, a walker, a four wheel and set, back brace, and longitudinal arch supports, and medical treatment.  Defendant Carrasquillo stated, "This interview is regarding the appeal process.  Your request for treatment is denied.  Your appeal will not be accepted at this time.  It was appropriately screened out."

On January 26 and 31, 2012, and February 7, 2012, Plaintiff gave notice at a medical appointment to both Defendants Johal and Belantes of the broken wheelchair, and requested to trade the broken wheelchair, a walker with four wheel and set, back brace, and arch supports. Both Defendants denied Plaintiff's adequate medical treatment and ADA services.

On February 18, 2012, Plaintiff had to miss breakfast, could not get out of bed, and was suffering pain, numbness in feet and legs.  Plaintiff's blood sugar dropped to 64; however, Plaintiff had to pay an inmate to push him to medical at dinner time.

On March 6, and 12, 2012, Plaintiff went to a medical appointment, spoke with Defendants Johal and Belantes, and requested ADA and medical treatment.  Plaintiff was denied.

On March 18, 2012, Plaintiff gave notice to Defendant Carrasquillo and Smiley of the ongoing constitutional violations.  On May 15, 2012, Defendant Carrasquillo interviewed

Plaintiff, and Plaintiff gave notice of his continued issues.  Defendant Carrasquillo stated, "What do you want?"  Plaintiff requested a wheelchair that is not broken, a walker with set and four wheels, a back brace, wheelchair cushion, gloves, pain treatment, and that Defendants Ogbuehi and Byers be reprimanded and their licenses be suspended.  Defendant Carrasquillo stated, "I'll send you a response when my investigation is completed.  Have a nice day."

Plaintiff had five more medical appointments with Defendant Johal on March 19 and 21, 2012, April 3, 2012, May 4, 2012 and June 4, 2012.  Plaintiff requested adequate medical treatment, a wheelchair that was not broken, a walker with four wheel and set, a back brace, wheelchair cushion, gloves, and arch supports.  Defendant Johal denied all requests.

On August 15, 2012, Plaintiff was transferred to California Medical Facility ("CMF"), in Vacaville, California.  However, Defendants at CSATF refused to provide Plaintiff with a wheelchair that was not broken, or to return Plaintiff's personal wheelchair.  Plaintiff had to keep the broken wheelchair and use it at CMF.

Plaintiff submitted a request to wheelchair repair, and gave notice to report to physical therapist.  Plaintiff spoke with Defendant O'Mar, and gave notice that Plaintiff's wheelchair was broken, among other things.  Defendant O'Mar issued a contaminated, small, broken wheelchair, which appeared to be stained with dry blood, feces, urine, or vomit.  Defendant O'Mar also issued Plaintiff another broken wheelchair, because Plaintiff continued to complain.  However, the other wheelchairs were too big, or had wobbly wheels, missing bearings and screws, or had a torn back rest and seat, which caused the crossbar to poke Plaintiff's thighs. Plaintiff gave notice of his continued issues. Plaintiff requested a new wheelchair, which was denied.

Plaintiff gave notice to Defendant Green, and requested a durable wheelchair and medical appliances.  Defendant Green refused to respond to any of Plaintiff's Health Care Services requests.  Defendant Green knew that Plaintiff's wheelchair was broken and needed repair, that there was no replacement or new wheelchair, and that Plaintiff suffers with disabilities that require reasonable accommodations.  Yet Defendant refused to correct the violation.

Plaintiff filed his grievance given notice to the following Defendants:  Bick, Harris, Collins, Strickland, Harmon, Harless, Gilliard, Horch and Gatr, regarding the ongoing violations.

1    III.    **Discussion**

2              **A.  Deliberate Indifference to Medical Needs**

3        A prisoner's claim of inadequate medical care does not constitute cruel and unusual

4   punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of

5   "deliberate indifference to serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

6   2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  Deliberate indifference may be

7   shown by the denial, delay or intentional interference with medical treatment or by the way in

8   which medical care is provided.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

9   The two-part test for deliberate indifference requires a plaintiff to show (1) "a 'serious medical

10  need' by demonstrating that failure to treat a prisoner's condition could result in further

11  significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's

12  response to the need was deliberately indifferent."  *Jett*, 439 F.3d at 1096.

13       A defendant does not act in a deliberately indifferent manner unless the defendant

14  "knows of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511

15  U.S. 825, 837 (1994).  "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty.*

16  *Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.

17  2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain

18  or possible medical need" and the indifference caused harm.  *Jett*, 439 F.3d at 1096.  In applying

19  this standard, the Ninth Circuit has held that "the indifference to his medical needs must be

20  substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

21  cause of action."  *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing

22  *Estelle*, 429 U.S. at 105–106).  "[A] complaint that a physician has been negligent in diagnosing

23  or treating a medical condition does not state a valid claim of medical mistreatment under the

24  Eighth Amendment.  Medical malpractice does not become a constitutional violation merely

25  because the victim is a prisoner."  *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*,

26  45 F.3d 1310, 1316 (9th Cir. 1995).  Even gross negligence is insufficient to establish deliberate

27  indifference to serious medical needs.  *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.

28  1990).

                                        13

1    Further, a "difference of opinion between a physician and the prisoner—or between

2    medical professionals—concerning what medical care is appropriate does not amount to

3    deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v.*

4    *Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), *overruled in part on other grounds, Peralta v. Dillard*,

5    744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir.

6    2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must

7    show that the course of treatment the doctors chose was medically unacceptable under the

8    circumstances and that the defendants chose this course in conscious disregard of an excessive

9    risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation

10   marks omitted).

11   Plaintiff has failed to state a claim against Defendants T. Price, J. Lopez, Does 1 and 2,

12   Defendant LeMay, and Defendant Thomas.  His allegations against these defendants concern the

13   brief period between May 11, 2011 and May 17, 2011, when he complained to these officers and

14   medical staff about his assistive devices and various appliances.  The items had been stored

15   while Plaintiff was at the hospital for treatment for several months, and the items were not

16   returned to Plaintiff during the few days he was requesting this property from these defendants.

17   On May 18, 2011, Plaintiff was transferred to a different yard.  Upon inquiry, it was determined

18   that the property was lost.  Plaintiff was using the wheelchair he had at discharge from the

19   hospital at the time.

20   These allegations do not show deliberate indifference by these Defendants.  Although

21   Plaintiff alleges that he complained that the wheelchair he used for these few days was wobbling,

22   rusty, difficult to ambulate, and had a damaged seat and back rest, he has not shown that these

23   Defendants were aware of serious risk of substantial harm to him, and that they were deliberately

24   indifferent to the risk.

25   Plaintiff also does not state a claim for deliberate indifference against Does 3 and 4.

26   Plaintiff alleges that when transferring him from B facility to F yard on May 18, 2011, these two

27   Defendants stated that there was no van for such use.  They further stated that Plaintiff had to roll

28   himself, and that they would "go slow" for him.  This does not demonstrate any knowing

14

disregard of an excessive risk to Plaintiff's safety or health, but at most may demonstrate some negligence.  As stated above, mere negligence is insufficient to show a constitutional violation.

Plaintiff also does not state any claim against Defendants Belantes, Faria, T. Brown, or Johal.  Plaintiff alleges that Defendant Belantes directed Plaintiff to submit his requests for another wheelchair and other devices to medical staff.  She further issued him a cane and other devices, including another wheelchair, when told to do so.  Plaintiff alleges that Defendant Faria, a registered nurse, on one occasion informed him that he needed to request equipment from the ADA equipment/appliance nurse.  Plaintiff also alleges that at one appointment, Defendant T. Brown met with Plaintiff regarding his complaints and requests for equipment, and told him that his medical chart was missing and so he would need to return for another evaluation and review of his medical chart.  None of these allegations meet the high standards discussed above to state a claim for deliberate indifference against these defendants.

Regarding Defendant Johal, Plaintiff's allegations relate to a disagreement with that medical staff's findings, and do not demonstrate deliberate indifference.  For example, Plaintiff alleges that Defendant Johal requested an MRI of Plaintiff's spine to investigate Plaintiff's condition, and the MRI showed worsening of Plaintiff's back.  Nevertheless, Defendant Johal determined to follow the medical findings of Defendant Oder that Plaintiff did not meet the criterion for DPO and should not be in possession of a wheelchair, but would instead benefit from a walker and cane, ground floor cell, bottom bunk, and other accommodations.  As discussed above, a disagreement between the patient and medical staff about medical treatment is not sufficient to show deliberate indifference.

The remaining Defendants employed at CSATF were involved in reviewing Plaintiff's requests for medical care or his health care appeals, such as by examining or interviewing Plaintiff, or in reviewing that information in resolving an appeal or request.  Denying a prisoner's administrative appeal does not cause or contribute to the underlying violation.  *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted).  However, because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, *Jett*, 439 F.3d at 1098, there may be limited circumstances in which those involved

in reviewing an inmate appeal can be held liable under section 1983. Here, Plaintiff has not stated any Eighth Amendment claim for deliberate indifference to serious medical needs.  As Plaintiff has not pleaded sufficient facts to show any violation occurred when his requests were denied, he cannot pursue any claim against those who reviewed his requests or appeals and authorized the denial of his requests.  Therefore, Plaintiff fails to state any claim against Defendants Oder, Ogbuehi, Byers, Ugwueze, Beltran, Alva, Tann, Carrasquillo, or Smiley.

The other defendants are involved in events that Plaintiff alleges occurred at CMF, in Vacaville, California, where Plaintiff alleges that he was transferred on August 15, 2012.  Those defendants and allegations are discussed further below.

### B.  Discrimination

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, (1985); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be established by showing that defendants intentionally discriminated against a plaintiff based on his membership in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702-03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071,1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553 U.S. 591, 601-02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

"[T]he disabled do not constitute a suspect class" for equal protection purposes.  *Does 1–5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) (citing *City of Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249). Therefore, Plaintiff has not shown that he was discriminated against because of his membership in any protected class.  Nor has Plaintiff shown that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose.  Plaintiff's conclusory statements that he was denied his requests for medical devices due to discrimination does not suffice.  Therefore, he has not stated any claim for a violation of his Fourteenth Amendment rights.

### C.  Americans with Disabilities Act ("ADA")/Rehabilitation Act ("RA")

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.  Title II applies to the services, programs, and activities provided for inmates by jails and prisons.  *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208-13 (1998); *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1021-22 (9th Cir. 2010); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1214-15 (9th Cir. 2008).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability."  *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *accord Simmons*, 609 F.3d at 1021; *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

While the RA has the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act.  Thus, courts have applied the same analysis to claims brought under both statutes."  *Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citations omitted).

Plaintiff's complaint does not set forth any facts supporting a claim that he was excluded from, or discriminated against, regarding services, programs, or activities because of his disability.  Plaintiff's claims arise out of the denial of his requests for medical devices and appliances, and such allegations do not provide a basis upon which to impose liability under the ADA or RA.  *Simmons*, 609 F.3d at 1022 (no protection for programs or activities to lessen depression) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)).

### D.  Eleventh Amendment

Plaintiff asserts claims against the State of California and its agency, the California Department of Corrections and Rehabilitation, for discrimination and the denial of his requests

17

for medical appliances and devices.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *accord Pittman v. Ore., Employment Dep't*, 509 F.3d 1065, 1071 (9th Cir. 2009).

The Eleventh Amendment bars suits against state agencies as well as those where the state itself is named as a defendant.  *See Natural Resources Defense Council v. California Dep't of Tranp.*, 96 F.3d 420, 421 (9th Cir. 1996); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (concluding that Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity); *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1989).

Based on the foregoing, Plaintiff's claims against the State of California and the California Department of Corrections and Rehabilitation are barred.

### E.  County Defendant

Plaintiff also seeks to bring a claim against King County due to discrimination at CSATF and the denial of his requests for medical appliances and devices.

Municipalities responsible for detaining arrestees in a custodial facility have a duty to provide those detainees with medical care for serious medical needs.  This duty arises from the Fourteenth Amendment's Due Process Clause.  *Gordon v. County of Orange*, 888 F.3d at 1124 (9th Cir. 2018).  To allege municipal liability for a violation of that duty properly, a plaintiff must establish the two prongs of *Monell*: (1) "that a 'policy or custom' led to the plaintiff's injury"; and (2) "that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of the jail's inhabitants.'"  *Castro v. County of Los Angeles*, 833 F.3d 1060,1073, 1076 (9th Cir. 2016) (internal citations omitted).

To establish deliberate indifference for municipal liability, the court applies an objective standard.  *Id.* at 1075. "Where a § 1983 plaintiff can establish that the facts available to

[municipal policymakers] put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied." *Id*. (quoting City *of Canton v. Harris*, 489 U.S. 378, 396 (1989)).

Here, Plaintiff has not pleaded facts showing a cognizable claim for deliberate indifference or that any policy led to that injury.  Therefore, his claim against the County of King should be dismissed.

### F.  Venue

As noted above, Plaintiff asserts claims against staff at CMF, where he was transferred on August 15, 2012.  These defendants include Defendants O'Mar, Green, Bick, Harris, Collins, Strickland, Harmon, Harless, Gilliard, Horch, and Gatr.  Plaintiff also asserts a claim against the County of Solano.

The federal venue statute requires that a civil action be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391.  In the interest of justice, a federal court may transfer a complaint filed in the wrong district to the correct district.  *See* 28 U.S.C. § 1406(a); *also see Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986) (court may raise defective venue *sua sponte*); *see also Davis v. Mason County*, 927 F.2d 1473, 1479 (9th Cir. 1991) (courts have broad discretion regarding severance).  In addition, pursuant to Rule 120(f) of the Local Rules of the Eastern District of California, a civil action which has not been commenced in the proper court may, on the court's own motion, be transferred to another venue within the district.  L.R. 120(f).

Here, venue is not proper in this court for Plaintiff's claims arising out of events at CMF, because CMF is located in Vacaville, California, County of Solano, in the Sacramento Division

of the United States District Court for the Eastern District of California.  Therefore, the Court shall recommend that those claims and defendants be severed from this action, and transferred to the proper division of the proper court.

**IV.      Conclusion and Recommendation**

Plaintiff' third amended complaint fails to state a cognizable claim for relief against the State of California, the California Department of Corrections and Rehabilitation, the County of King, or Defendants T. Price, J. Lopez, Does 1 -4, LeMay, Thomas, Belantes, Faria, T. Brown, Johal, Oder, Ogbuehi, Byers, Ugwueze, Beltran, Alva, Tann, Carrasquillo, or Smiley.  Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies by amendment, and thus further leave to amend is not warranted.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Further, for the reasons explained above, the Court finds that venue is not proper here for the remaining claims and defendants, and those claims and defendants should be severed from this action, and transferred to the proper division of the proper court.

Accordingly, it is HEREBY RECOMMENDED that:

1.       Plaintiff's claims against the State of California, the California Department of Corrections and Rehabilitation, the County of King, or Defendants T. Price, J. Lopez, Does 1 -4, LeMay, Thomas, Belantes, Faria, T. Brown, Johal, Oder, Ogbuehi, Byers, Ugwueze, Beltran, Alva, Tann, Carrasquillo, and Smiley, be dismissed, with prejudice, for the failure to state a claim upon which relief may be granted, and;

2.       Plaintiff's claims against Defendants O'Mar, Green, Bick, Harris, Collins, Strickland, Harmon, Harless, Gilliard, Horch, and Gatr, and the County of Solano, be severed and transferred to the Sacramento Division of the United States District Court for the Eastern District of California.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to

Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 27, 2018**                                   /s/ *Barbara A. McAuliffe*
                                                    UNITED STATES MAGISTRATE JUDGE